UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALBERT HODGES,<br><br>              Plaintiff,<br><br>       v.<br><br>PRETTIPAUL,<br><br>              Defendant. | No.  1:25-cv-00707-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 29) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment for failure to exhaust the administrative remedies, filed February 23, 2026.  (ECF No. 29.)

**I.**

**BACKGROUND**

This action is proceeding against Defendant Doctor Prettipaul for deliberate indifference to Plaintiff's mental health needs in violation of the Eighth Amendment.

Defendant filed an answer to the complaint on October 3, 2025.  (ECF No. 16.)

The Court issued the discovery and scheduling order on November 5, 2025.  (ECF No. 22.)

1

On February 23, 2026, Defendant filed a motion for summary judgment for failure to exhaust the administrative remedies.  (ECF No. 29.)  Plaintiff filed an opposition on March 9, 2026, and Defendant filed a reply on March 16, 2026.  (ECF Nos. 32, 33.)

## II.

## LEGAL STANDARD

### A.      Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

///

2

**B.      Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection. Instead, the Court thoroughly reviewed and considered the evidence it deemed

admissible, material, and appropriate for purposes of issuing these Findings and Recommendations.

## III.

## DISCUSSION

### A.    Description of CDCR's Administrative Remedy Process

At all times relevant to this action, California Correctional Health Care Services (CCHCS) provided an administrative health care grievance process in accordance with Title 15 of the California Code of Regulations. Cal. Code Regs. tit. 15, §§ 3999.225–3999.237. Health care grievances are subject to two levels of review: (1) Institutional Level review and (2) Headquarters Level review. (Martin Decl., ¶¶ 1, 3.)  Inmates must submit Institutional Level grievances to the Health Care Grievance Office (HCGO) where the grievant is housed. Cal. Code Regs. tit. 15, § 3999.227(m). A health care grievance must receive a Headquarters Level disposition before administrative remedies are deemed exhausted, and a rejection does not exhaust administrative remedies. Cal. Code Regs. tit. 15, § 3999.226(g); (Martin Decl., ¶ 3.)

### B.    Allegations of Complaint

Plaintiff alleges that during a mental health evaluation, Dr. Prettipaul made dismissive statements about suicide watch and declined to admit Hodges to a Mental Health Crisis Bed. Plaintiff further alleges that after being returned to his cell, he cut his arm, requiring 12 stitches.

### C.    Undisputed Facts[1]

1.    Plaintiff James Albert Hodges (V41134) is an inmate currently housed at Salinas Valley State Prison.  (ECF No. 1 at 1.)

2.    At the time period relevant to this action, Hodges was incarcerated at Kern Valley State Prison (KVSP).  (ECF No. 1 at 1.)

3.    Defendant Dr. A. Prettipaul was a psychologist employed at KVSP at the time relevant to this action.  (ECF No. 1 at 2.)

---

[1] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed.  Local Rule 56-260(b).  Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

4

4. Hodges initiated this civil rights action on June 10, 2025. (ECF No. 1.)

5. In his complaint, Hodges alleges that during a mental health evaluation, Dr. Prettipaul made dismissive statements about suicide watch and declined to admit Hodges to a Mental Health Crisis Bed. (ECF No. 1 at 3.)

6. Hodges alleges that after being returned to his cell, he cut his arm, requiring 12 stitches. (ECF No. 1 at 3-4.)

7. Hodges's complaint alleges the incident occurred on May 14, 2025. Hodges's grievance states the incident occurred on May 21, 2025. Hodges admitted at deposition that May 21, 2025, could have been the correct date of the incident despite his allegations in the complaint. (ECF No. 1 at 3; Declaration of K. Martin (Martin Decl.), ¶ 7, Ex. B AGO 000040; Declaration of R. Brandel (Brandel Decl.), ¶ 2, Ex. A, Transcript of Plaintiff's Deposition (Pl.'s Dep.) at AGO 000005-06.)

8. Health care grievances for California state prisoners are processed by California Correctional Health Care Services (CCHCS) and are subject to two levels of review. The first level is the Institutional Level review and the second is the Headquarters Level review. (Martin Decl., ¶¶ 1, 3.)

9. A health care grievance must receive a Headquarters Level disposition before administrative remedies are deemed exhausted. (Martin Decl., ¶ 3.)

10. A health care grievance rejection at the Headquarters Level does not exhaust administrative remedies. (Cal. Code Regs., tit. 15, § 3999.226(g); Martin Decl., ¶ 3.)

11. A claimant who is dissatisfied with an Institutional Level response may appeal to the Headquarters Level within 30 calendar days of receiving the Institutional Level response. (Cal. Code Regs., tit. 15, § 3999.229(a); Martin Decl., ¶ 3.)

12. On May 30, 2025, Hodges submitted health care grievance KVSP HC 25000686 directly to the Headquarters Level, bypassing the Institutional Level of review. (Martin Decl., ¶ 7, Ex. B. at AGO 000040, 43; Brandel Decl., ¶4, Ex. B. at AGO 000002, 07.)

13. In his grievance, Hodges alleged that on May 21, 2025, he reported suicidal ideation to correctional staff and was evaluated by Dr. Prettipaul, who allegedly dismissed

5

Hodges's suicidal ideation as "safety concerns," smiled and sent Hodges back to his cell where he committed self-harm.  (Martin Decl., ¶ 7, Ex. B at AGO 000040-41.)

14.     At the time Hodges filed this lawsuit, his grievance had not been processed at the Institutional Level because he had first submitted it directly to the Headquarters Level.  (See Martin Decl., ¶¶ 7-8, Ex. B; ECF No. 1; Brandel Decl., ¶4, Ex. B. at AGO 000002, 07.)

15.     On August 29, 2025, HCCAB issued a Headquarters' Level Rejection Notice for KVSP HC 25000686.  (Martin Decl., ¶ 7, Ex. A at AGO 000002-03, Ex. B at AGO 000043; Brandel Decl., ¶4, Ex. B. at AGO 000002, 07.)

16.     The rejection was for "bypass"—Hodges failed to submit his grievance first to the Institutional Level to Health Care Grievance Office (HCGO) as required by California Code of Regulations, Title 15, Section 3999.227(m).  (Martin Decl., ¶ 7, Ex. B at AGO 000043; Brandel Decl., ¶4, Ex. B. at AGO 000002, 07.)

17.     The Headquarters' Level Rejection Notice gave Hodges until September 30, 2025, to resubmit to the Institutional Level HCGO. On September 12, 2025, Hodges resubmitted grievance KVSP HC 25000686 to the HCGO at his institution, as directed by the Headquarters' Level Rejection Notice.  (Martin Decl., ¶¶ 7-8, Ex. A at AGO 000002-03, Ex. B at AGO 000036-38; Brandel Decl., ¶4, Ex. B. at AGO 000003, 07.)

18.     The Institutional Level Response for grievance KVSP HC 25000686 was issued with a closing date of October 14, 2025.  (Martin Decl., ¶ 8, Ex. A at AGO 000002 -03, Ex. B at AGO 000036-37.)

19.     The Institutional Level Response indicated a disposition of "No Intervention" and stated that the allegations were "referred outside of the health care grievance process to the applicable authority for an investigation or examination" as staff misconduct outside of the health care grievance process. The grievance decision also stated if dissatisfied with the response, Hodges must "submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies."  (Martin Decl., ¶ 8, Ex. B at AGO 000036-38.)

20.     Under California Code of Regulations, Title 15, Section 3999.229(a), Hodges had

30 calendar days from the date of the Institutional Level Response to appeal to the Headquarters Level.  (Martin Decl., ¶ 8, Ex. A at AGO 000002-03.)

21.    The Institutional Level Response was closed and mailed on October 14, 2025. Adding four days for mailing, Hodges's deadline to appeal to the Headquarters Level was November 17, 2025.  (Martin Decl., ¶ 8, Ex. A at AGO 000002-03.)

**D.    Analysis of Defendant's Motion**

Defendant argues that Plaintiff never completed the available administrative process and summary judgment should be granted.  More specifically, Defendant argues that Plaintiff filed this action before any level of review was completed and never appealed to the final level of review; the staff misconduct referral does not satisfy exhaustion; and he cannot demonstrate that the administrative remedies were unavailable.

In his opposition, Plaintiff argues that "material facts remain in genuine dispute for resolution at trial" and a jury should determine liability.  (ECF No. 32 at 1-2.)  Plaintiff also submits the "Internal Affairs delayed exhausted grievance" and summary judgment "should not [be] granted based on [whether] plaintiff exhausted" because it was "out of [Plaintiff's] hands." (Id. at 2.)

In response, Defendant argues the merits of Plaintiff's claim is irrelevant to the issue of exhaustion and his vague reference to "Internal Affairs" does not demonstrate that the remedies were unavailable.  More specifically, Defendant argues that the staff misconduct referral is outside the health care grievance process; Plaintiff was not prevented from appealing; Plaintiff's actions in resubmitting his grievances demonstrates the process was available; and Plaintiff admitted he did not exhaust his administrative remedies prior to filing this action.  (ECF No. 33.)

On the form complaint, Plaintiff simply checks the box "yes" in response to the question whether he filed an appeal to the highest level of review, without any supporting factual information.  (ECF No. 1, Compl. at 4.)  Thus, it is clear from the face of the complaint that the grievance process was available to Plaintiff based on his contention that he completed all the necessary steps to exhaust his administrative remedies.  Albino, 747 F.3d at 1172.

Here, it is undisputed on May 30, 2025, Hodges submitted health care grievance KVSP

7

HC 25000686 directly to the Headquarters Level, bypassing the Institutional Level of review. (UF 12.)  In his grievance, Hodges alleged that on May 21, 2025, he reported suicidal ideation to correctional staff and was evaluated by Dr. Prettipaul, who allegedly dismissed Hodges's suicidal ideation as "safety concerns," smiled and sent Hodges back to his cell where he committed self-harm. (UF 13.)  Eleven days after submitting grievance KVSP HC 25000686, Plaintiff filed the instant lawsuit on June 8, 2025.[2]  (UF 14.)

On August 29, 2025, HCCAB issued a Headquarters' Level Rejection Notice for KVSP HC 25000686. (UF 15.)  The rejection was for "bypass"—Hodges failed to submit his grievance first to the Institutional Level to Health Care Grievance Office (HCGO) as required by California Code of Regulations, Title 15, Section 3999.227(m). (UF 16.)  The Headquarters' Level Rejection Notice gave Hodges until September 30, 2025, to resubmit to the Institutional Level HCGO. On September 12, 2025, Hodges resubmitted grievance KVSP HC 25000686 to the HCGO at his institution, as directed by the Headquarters' Level Rejection Notice. (UF 17.)

The Institutional Level Response for grievance KVSP HC 25000686 was issued with a closing date of October 14, 2025. (UF 18.)  The Institutional Level Response indicated a disposition of "No Intervention" and stated that the allegations were "referred outside of the health care grievance process to the applicable authority for an investigation or examination" as staff misconduct outside of the health care grievance process.

Under California Code of Regulations, Title 15, Section 3999.229(a), Hodges had 30 calendar days from the date of the Institutional Level Response to appeal to the Headquarters Level. (UF 20.)  The Institutional Level Response was closed and mailed on October 14, 2025. Adding four days for mailing, Hodges's deadline to appeal to the Headquarters Level was November 17, 2025. (UF 21.)  However, Defendant submits evidence that Plaintiff never appealed the October 14, 2025, decision to HCCAB and thus never received a Headquarters Level response.  (Martin Decl. ¶ 8, Ex. A at AGO 000002-03; Brandel Decl. ¶ 4, Ex. B at AGO

---

[2] Under the mailbox rule, a prisoner is deemed to have filed a document "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing mailbox rule for prisoner's filing of appeal); see also Douglas v. Noelle, 567 F.3d 1103, 1107–09 (9th Cir. 2009) (extending Houston mailbox rule to prisoner's filing of complaint in § 1983 action).

8

000003, 09.)

Based on the evidence listed above, the Court finds that Defendant has met his initial of proof in setting forth evidence that Plaintiff failed to properly exhaust the administrative remedies with respect to his claim.  See Albino, 747 F.3d at 1172.  The burden now shifts to Plaintiff "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  Albino, 747 F.3d at 1168 (quotation marks omitted).

Plaintiff argues that the referral to the "Internal Affairs" exhausted the administrative remedies with respect to his health care grievance claim.  Irrespective of whether the institutional level response on October 14, 2025, exhausted Plaintiff's administrative remedies, it was not issued until after Plaintiff filed the operative complaint in this action on June 10, 2025, and dismissal, without prejudice, is mandated.[3]  See, e.g., Jones v. Bock, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005) (If a court concludes that a prisoner failed to exhaust his available administrative remedies before filing a civil rights action, the proper remedy is dismissal without prejudice).

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendant's motion for summary judgment for failure to exhaust the administrative remedies be granted; and

2.     The instant action be dismissed, without prejudice, for failure to the exhaust the administrative remedies prior to filing this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The

---

[3] The Court notes that the deadline to amend the pleadings expired on February 5, 2026.  (ECF No. 22.)

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 14, 2026**

_____
STANLEY A. BOONE
United States Magistrate Judge

10